UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| YENIDUNYA INVESTMENTS, LTD., a Cyprus, EU Corporation;<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MAGNUM SEEDS, INC., a California Corporation; and GENICA RESEARCH CORPORATION, a Nevada Corporation;<br><br>　　　　Defendants.<br>_____/ | NO. CIV. 2:11-1787 WBS<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS OR TO STRIKE PORTIONS OF THE COMPLAINT |

----oo0oo----

　　　　Plaintiff Yenidunya Investments, Ltd. brought this action against defendants Magnum Seeds, Inc. ("Magnum") and Genica Research Corporation ("Genica") for declaratory relief and accounting arising out of defendants' allegedly wrongful violation of plaintiff's rights as a Magnum shareholder. Presently before the court is defendants' motion to dismiss plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be

1

granted and defendants' motion to strike portions of plaintiff's Complaint pursuant to Rule 12(f).

I.   Factual and Procedural Background

In early October 2003, Spiros Spirou & Co. ("SS & Co.") obtained common stock in Magnum by converting a $2,267,995.00 loan into 2,267,995 shares of Magnum.  (Compl. ¶ 7 (Docket No. 1).)  As a shareholder, SS & Co. signed an "Amendment to Buy-Out Agreement" containing the following provision:

> A.   The Corporation [Magnum] and the Shareholder [SS & Co.] are parties to that certain Buy-Out Agreement dated \_\_\_\_, 200\_ (the "Buy-out Agreement"), pursuant to which the Corporation retains the right of first refusal on all the shares of the Corporation's common stock (the "Common Stock") owned by the Shareholder.

(Id. ¶ 15, Ex. D at 80.)  The Amendment to Buy-Out Agreement also contained a provision later invoked by Magnum to acquire plaintiff's shares:

> 8(b) Call Options.  If a person makes a bona fide offer to purchase all (but not less than all) the outstanding shares of the Corporation which the holders of at least two-thirds (2/3) of the outstanding shares of stock of the Corporation, whether Common or Series A Preferred or both, are prepared to accept, the Corporation shall have the right and option to require all Shareholders to tender their shares on the same terms and conditions and for the same price as the offeror has offered the said holders of two-thirds (2/3) of the outstanding shares of stock of the Corporation.

(Id. ¶ 15, Ex. D at 81.)

In late October 2003, SS & Co. transferred the 2,267,995 shares of Magnum common stock to plaintiff, which is an affiliated company.  (Id. ¶ 8.)  Upon notice of the transfer, Magnum recognized plaintiff as a shareholder and issued Certificate No. 6 to plaintiff for 2,267,995 shares of common stock.  (Id. ¶¶ 8-9.)

1              In March 2005, Genica offered to purchase all of the
2    outstanding shares of Magnum from the existing shareholders.
3    (Id. ¶ 13.)  In a "Stock Purchase Agreement" dated March 7, 2005,
4    Genica offered to pay plaintiff $1,133,997.50 over a ten-year
5    period.  (Id.)  Plaintiff declined the offer to purchase its
6    shares and never executed or delivered the Stock Purchase
7    Agreement.  (Id.)  All other Magnum shareholders accepted
8    Genica's offer to purchase their shares and executed the Stock
9    Purchase Agreement.  (Id.)  A "Promissory Note" was delivered to
10   plaintiff at closing pursuant to the Stock Purchase Agreement.
11   (Id. ¶ 19.)  Defendants contend that plaintiff is bound under
12   section 8(b) of the Buy-Out Agreement to the terms of the Stock
13   Purchase Agreement and Promissory Note because all other Magnum
14   shareholders accepted the stock purchase offer.  (Id. ¶ 15.)

15             Since March 7, 2005, Magnum has not: (1) notified or
16   given plaintiff the opportunity to attend Magnum shareholder
17   meetings; (2) given plaintiff the opportunity to elect Magnum
18   directors; (3) provided plaintiff with Magnum's quarterly or
19   annual financial statements; (4) allowed plaintiff the right to
20   inspect Magnum's books, records, and minute proceedings; or (5)
21   paid plaintiff its proportionate share of shareholder dividends.
22   (Id. ¶ 10.)

23             On March 8, 2005, Magnum sent a Notice of Call of Stock
24   to plaintiff advising plaintiff that "upon closing of the sale of
25   shares to Genica . . . whether or not your share certificate and
26   signed stock Assignment and Release have been received, you will
27   cease to be a shareholder and will have no further rights,
28   preferences or privileges as a shareholder of [Magnum]."

3

(Kimport Decl. Ex. 1. (Docket No. 13).)

Two days later, on March 10, 2005, plaintiff's counsel, Dale Campbell, sent a letter to Magnum challenging Magnum's ability to force plaintiff to transfer its shares to Magnum and promising to "take the steps necessary to protect its investment in Magnum and prevent the sale of Genica from occuring over its objection." (Id. Ex. 2 at 3-4.) Magnum's counsel, David Kimport, responded on March 15, 2005, by informing plaintiff that the stock repurchase was enforceable and that plaintiff was no longer a shareholder in Magnum. (Id. Ex. 3.)

On at least two separate occasions, February 15, 2005, and September 11, 2006, plaintiff's principal requested Magnum's financial reports. On both occasions, plaintiff was informed that it "is no longer a shareholder of Magnum and therefore no longer has a right to such financial information." (Id. Exs. 4, 5.)

Plaintiff filed for declaratory relief seeking to be recognized as a Magnum shareholder on July 6, 2011.

## II. Discussion

### A. Motion to Dismiss

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

4

(2007).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009), and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).

Plaintiff argues that it is premature to find that a claim is time-barred upon a motion to dismiss.  A statute of limitations defense "may be raised by a motion for dismissal or by summary judgment motion."  Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980).  "If the running of the statute is apparent on the face of the complaint, the defense may be raised by a motion to dismiss."  Id.

Plaintiff's action was filed in July 2011, while many of the events giving rise to the claim occurred in March 2005. Defendants have accordingly challenged plaintiff's request for declaratory relief as time-barred.  California law supplies the statue of limitations to be applied in a diversity action on state law claims.  Walker v. Armco Steel Corp., 446 U.S. 740, 752-53 (1980).  The applicable statute of limitations is determined by the nature of the right sued upon and not by the form of the action or relief demanded.  Day v. Greene, 59 Cal. 2d 404, 411 (1963).  "Thus, if declaratory relief is sought with reference to an obligation which has been breached and the right to commence an action for 'coercive' relief upon the cause of action arising therefrom is barred by the statute, the right to declaratory relief is likewise barred."  Maguire v. Hibernia Sav.

5

& Loan Soc'y, 23 Cal. 2d 719, 734 (1944).

Plaintiff does not specify the nature of the right sued upon, rather the Complaint requests that the court declare that plaintiff remains a shareholder of Magnum and that the Stock Purchase Agreement, the Promissory Note, the Buy-Out Agreement, and the Amendment to the Buy-Out Agreement have no force on plaintiff. (Compl. at 9.) The legislature has provided a catch-all, four-year statute of limitations for actions that do not appear to fit in any enumerated categories. Cal. Civ. Proc. Code § 343. The California Supreme Court applied the four-year catch-all in the factually similar case of Maquire v. Hibernia Savings & Loan Society, 23 Cal. 2d at 733, which addressed the membership interests of successors-in-interest of an incorporated savings and loan society. Plaintiff has similarly requested a declaration of the status of its membership interest as a shareholder of Magnum. (Compl. ¶ 11.) The court will therefore apply a four-year statute of limitations to determine if plaintiff's request is time-barred.[1]

The statute of limitations generally begins to run at "the time when the cause of action is complete with all its elements. An exception is the discovery rule, which postpones accrual of a cause of action until the plaintiff . . . suspects,

---

[1] In plaintiff's Opposition to Motion to Dismiss, plaintiff applies the four-year statute of limitations for a breach of written contract under California Code of Civil Procedure section 337. (Docket No. 16 at 4:7-8.) However, because plaintiff contests the validity of the Promissory Note, none of plaintiff's claims arise out of a breach of contract. Regardless of the underlying cause of action, neither party has presented evidence that the applicable statute of limitations should be longer than four years.

or has reason to suspect, a factual basis for its elements." Norgart v. Upjohn Co., 21 Cal. 4th 383, 389 (1999); see also Apple Valley Unified Sch. Dist. v. Vavrinek, Trine, Day & Co., 98 Cal. App. 4th 934, 943 (2002).

The application of the statute of limitations to actions for declaratory relief is addressed in Maguire, where the defendant denied plaintiffs' status as members of the company based on a change to the bylaws that had occurred decades prior to the suit being filed. Maguire, 23 Cal. 2d at 733. There was no evidence that plaintiffs had knowledge of the change to the bylaws or that they were deprived of their membership rights during the intervening period. Id. at 735. The California Supreme Court held that the statute of limitations "does not commence to run . . . until the stockholder has knowledge that his rights are denied or his status is controverted by the corporation." Id.

In March 2005, plaintiff received Genica's offer to purchase all of Magnum's outstanding shares and was aware that defendants believed that plaintiff was bound to sell its shares because all other shareholders accepted this offer. (Compl. ¶ 13.) Indeed, plaintiff alleges in its Complaint that its rights as a shareholder were denied commencing in March 2005. (Id. ¶ 10.) Under Maguire, the statute of limitations begins to run when the shareholder has knowledge that the corporation has denied its shareholder status and its membership rights have been

denied.[2]  On the face of the Complaint, plaintiff alleges that it had knowledge that Magnum terminated its shareholder status and that it was denied its rights as a shareholder beginning in March 2005.[3]  The court therefore finds that the statute of limitations began to run in March 2005.

Plaintiff argues that the statute of limitations could not start running until July 2008, when the first payments to former shareholders were due pursuant to the Promissory Note. (Opp'n to Mot. to Dismiss at 4:5-10.)  Plaintiff cites United Pacific-Reliance Insurance Co. v. Didomenico, 173 Cal. App. 3d 673 (1st Dist. 1985), to support its position that the statute of limitations does not begin to run until breach of the underlying contract is possible.  (Opp'n to Mot. to Dismiss at 5:1-14.)  In United Pacific, the court relied on Maguire to find that the statute of limitations had not begun to run because the defendant continued to discharge its obligations and therefore no breach of contract existed.  Id. at 677.  Plaintiff's reliance on United Pacific is misguided because, unlike the plaintiff in that case, plaintiff here is not suing to enforce a specific contract provision, and defendant's breach of duties allegedly occurred in

---

[2] Plaintiff disputes the applicability of Maguire in this case by arguing that the Complaint goes beyond an effort to repurchase plaintiff's shares and in addition requests the court to interpret the contract.  As discussed in more detail below, there is no evidence of plaintiff's further requests on the face of the Complaint.

[3] The court relies only on information contained on the face of the Complaint to make the determination that plaintiff was aware that its shareholder status was terminated and that its membership rights were no longer recognized in March 2005. Additional details provided by the defendants were not necessary in making this determination as the fact was alleged in the Complaint.

8

2005.

July 2008 would be the proper date for accrual of the statute of limitations if plaintiff acknowledged the validity of the Promissory Note and filed suit to enforce the Promissory Note's provisions requiring Genica to make payments. That is not the suit before the court. Plaintiff is not suing to enforce the terms of the Promissory Note, rather the gravamen of its Complaint is that the Promissory Note was never a valid contract.[4]

During oral arguments, plaintiff argued for the first time that the statue of limitations has not begun to run in this case because the controversy continues to exist.[5] Plaintiff

---

[4] Plaintiff's Complaint asks the court for "a declaration that neither the Stock Purchase Agreement, the Promissory Note, the Buy-Out Agreement or the Amendment to Buy-Out Agreement are valid and enforceable agreements with respect to YENIDUNYA." (Compl. ¶ 22.) Plaintiff argues that defendants miscategorize its Complaint as "an action to void a contract," however, that is exactly what plaintiff is asking the court to do. Plaintiff attempts to rhetorically distinguish its claims as being "to determine the construction and the validity of the Note." (Sur-Reply in Supp. of Opp'n to Mot. to Dismiss at 6:15-17 (Docket No. 18)) (emphasis added). The Complaint contains no allegation regarding enforcement of the terms of the Promissory Note and the court is unwilling to read one into the pleadings. Thus, the court sees no reasonable interpretation of the Complaint other than that the plaintiffs seek declaratory relief to declare the Promissory Note invalid (and therefore to void the contract). "Actions to void contracts are nonetheless subject to the statute of limitations." Marin Healthcare Dist. v. Sutter Health, 103 Cal. App. 4th 861, 879 (3d Dist. 2002).

[5] Plaintiff's Sur-Reply in Support of its Opposition to the Motion to Dismiss makes a passing reference that "[t]he statute of limitations on Plaintiff's declaratory relief claim to determine the legal rights and duties of the parties under the Note has not run." (Sur-Reply in Supp. of Opp'n to Mot. to Dismiss at 4:1-2.) However, plaintiff's contention in the Sur-Reply appears to rely on the four-year statute of limitations for breach of a written contract, and not its later claim that the statute of limitations continues to run because of outstanding

cites no support for the proposition that declaratory relief actions can be brought to challenge the underlying contract so long as the parties have outstanding obligations under the contract.[6] Actions for declaratory relief can be used to bring suit prior to breach, but they cannot be used to extend the statute of limitations beyond that for ordinary causes of action. See Maguire, 23 Cal. 2d at 734.  If the court were to adopt plaintiff's contention that declaratory relief actions can be brought so long as there are outstanding obligations under a contract, parties could freely circumvent the statute of limitations to raise claims long barred due to untimeliness.

Plaintiff further argues that if this action is dismissed, the parties' rights and duties with respect to one another will not be resolved.  Defendants would like to pay plaintiff for its shares and collect the shareholder certificates, and plaintiff would like to remain a shareholder. (Sur-Reply in Supp. of Opp'n to Mot. to Dismiss at 2:8-16.) "Statutes of limitations are upheld regardless of hardship or of the underlying merits of the claim."  State Farm Fir & Casualty Co. v. Superior Court, 210 Cal. App. 3d 604 (6th Dist. 1989). "Statutes of limitation 'require plaintiffs to diligently pursue

---

contractual obligations.

[6] To the contrary, the decision in Marin Healthcare District suggests that this is not the law.  In that case, plaintiff sought a declaration from the court that a twelve-year-old lease was invalid because the district's chief executive and legal counsel had an undisclosed financial interest in the agreement when it was executed.  Despite the fact that there were continuing obligations under the lease, the court found that the statute of limitations barred challenges to the contract's validity.  Marin Healthcare Dist., 103 Cal. App. 4th at 880.

10

1 their claims' and are 'intended to run against those who are
2 neglectful of their rights.'" Traverso v. Dep't of Transp., 87
3 Cal. App. 4th 1142, 1149 (1st Dist. 2001) (quoting Jolly v. Eli
4 Lilly & Co., 44 Cal. 3d 1103, 1112 (1988); Pashley v. Pac. Elec.
5 Ry. Co., 25 Cal. 2d 226, 228–29 (1944)).
6      "When a motion to dismiss is based on the running of
7 the statute of limitations, it can be granted only if the
8 assertions of the complaint, read with the required liberality,
9 would not permit the plaintiff to prove that the statute was
10 tolled." Jablon, 614 F.2d at 682.  Plaintiff does not allege in
11 its Complaint that the statute of limitations has been tolled,
12 nor does plaintiff allege any facts suggesting delayed discovery
13 of the termination of its shareholder status.  There is no
14 suggestion that further discovery or pleading would provide
15 support for the tolling of the statute of limitations given
16 plaintiff's allegations that Magnum breached its obligations
17 starting in March 2005.  As plaintiff does not contend that the
18 statute of limitations should be tolled, the remaining
19 determination is a question of law and therefore resolution
20 through a motion to dismiss is appropriate.  Accordingly, because
21 plaintiff's claim was filed over two years after the four-year
22 statute of limitations had expired in March 2009, it is untimely
23 and the court must grant defendants' motion to dismiss.
24      IT IS THEREFORE ORDERED that defendants' motion to
25 dismiss the Complaint be, and the same hereby is, GRANTED; and
26 defendants' motion to strike be, and the same hereby is, DENIED
27 as moot.  The Status (Pretrial Scheduling) Order, filed October
28 27, 2011 (Docket No. 22), is hereby VACATED.

DATED:   October 28, 2011

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE