UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

YENIDUNYA INVESTMENTS, LTD., a          NO. CIV. 2:11-1787 WBS
Cyprus, EU Corporation;

       Plaintiff,                    MEMORANDUM AND ORDER RE:
                                         MOTION FOR ATTORNEYS' FEES
   v.

MAGNUM SEEDS, INC., a
California Corporation; and
GENICA RESEARCH CORPORATION, a
Nevada Corporation;

       Defendants.
_____/

----oo0oo----

     Plaintiff Yenidunya Investments, Ltd. brought this

action against defendants Magnum Seeds, Inc. ("Magnum") and

Genica Research Corporation ("Genica") for declaratory relief and

accounting arising out of defendants' allegedly wrongful

violation of plaintiff's rights as a Magnum shareholder.

Presently before the court is defendants' motion for attorneys'

fees.

////

1

1  I.    Factual and Procedural Background

2         In October 2003, Spiros Spirou & Co. ("SS & Co.")

3  obtained common stock in Magnum by converting a $2,267,995.00

4  loan into 2,267,995 shares of Magnum.  (Compl. ¶ 7 (Docket No.

5  1).)  As a shareholder, SS & Co. signed an "Amendment to Buy-Out

6  Agreement," which contained a "call-option" that required any

7  shareholder to sell its shares back to Magnum when certain

8  conditions were met.  (Id. ¶ 15.)  The Amendment also

9  incorporated by reference a "Buy-Out Agreement," which contained

10  a prevailing party attorneys' fee clause.  (Id. Ex. D at 91.)

11  Both the Amendment to the Buy-Out Agreement and the Buy-Out

12  Agreement were attached to the Complaint.  (Id. Ex. D.)

13         In late October 2003, SS & Co. transferred the

14  2,267,995 shares of Magnum common stock to plaintiff, which is an

15  affiliated company of SS & Co.  (Id. ¶ 8.)  In March 2005, Genica

16  offered to purchase all of the outstanding shares of Magnum from

17  the existing shareholders.  (Id. ¶ 13.)  In a "Stock Purchase

18  Agreement" dated March 7, 2005, Genica offered to pay plaintiff

19  $1,133,997.50 over a ten-year period.  (Id.)  Plaintiff declined

20  the offer to purchase its shares and never executed or delivered

21  the Stock Purchase Agreement.  (Id.)  All other Magnum

22  shareholders accepted Genica's offer to purchase their shares and

23  executed the Stock Purchase Agreement, triggering the call option

24  in the Amendment to the Buy-Out Agreement.  (Id.)  A "Promissory

25  Note" was delivered to plaintiff at closing pursuant to the Stock

26  Purchase Agreement.  (Id. ¶ 19.)  Both the Stock Purchase

27  Agreement and the Promissory Note were attached to the Complaint

28  and contain prevailing party attorneys' fee clauses.  (Id. Exs.

2

1  C, E.)

2          Over six years later, on July 6, 2011, plaintiff filed
3  for declaratory relief seeking to be recognized as a Magnum
4  shareholder.  (Docket No. 1.)  The Complaint asked the court for
5  "a declaration that neither the Stock Purchase Agreement, the
6  Promissory Note, the Buy-Out Agreement or the Amendment to Buy-
7  Out Agreement are valid and enforceable agreements with respect
8  to YENIDUNYA."  (Compl. ¶ 22.)

9          On August 11, 2011, defendants moved to dismiss
10  plaintiff's complaint on the ground that it was barred by the
11  statute of limitations.  (Docket No. 12.)  The court granted
12  defendant's motion on October 31, 2011, finding that the statute
13  of limitations had run because "the gravamen of [plaintiff's]
14  Complaint is that the Promissory Note was never a valid
15  contract."  (Oct. 31, 2011, Order at 9:7-9 (Docket No. 23).)  On
16  November 7, 2011, plaintiff moved for the court to reconsider its
17  prior order.  (Docket No. 25.)  The court denied plaintiff's
18  motion, explaining that plaintiff's claims were "barred by the
19  statute of limitations and that the time for the Court to make a
20  determination of the underlying legal issues had passed."  (Dec.
21  7, 2011, Order at 7:10-12 (Docket No. 29).)

22          Presently before the court is defendants' motion for
23  attorneys' fees pursuant to attorneys' fees clauses in the Buy-
24  Out Agreement, Stock Purchase Agreement, and Promissory Note.
25  (Docket No. 32.)  As the prevailing party, defendants seek to
26  recover $127,206.96 in attorneys' fees and costs for their work
27  defending this action.

28  ////

II.  <u>Discussion</u>

         "A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees."  <u>Kona Enters., Inc. v. Estate of Bishop</u>, 229 F.3d 877, 883 (9th Cir. 2000).  Because this case arises under diversity jurisdiction, 28 U.S.C. § 1332(a), the court must apply California law in deciding plaintiff's motion for attorneys' fees and untaxed costs.

         Although California law "ordinarily does not allow for the recovery of attorneys' fees," California Civil Code section 1717 provides for an award of attorneys' fees where "the parties contractually obligate themselves" to so compensate each other.  <u>Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.</u>, 250 F.3d 1234, 1237 (9th Cir. 2001) (citing Cal. Civ. Code § 1717; <u>Trope v. Katz</u>, 11 Cal. 4th 274, 279 (1995)).  Section 1717 specifically instructs:

> In any action on a contract, where the contract specifically provides that attorney[s'] fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney[s'] fees in addition to other costs.

Cal. Civ. Code § 1717(a).  Defendants must therefore show that they are the prevailing party and that the action was "on a contract" that included an attorneys' fee provision.

     A.  <u>Prevailing Party</u>

         California Code of Civil Procedure section 1032(a)(4) provides in part that the "'[p]revailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor

defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant." Cal. Code Civ. Proc. § 1032(a)(4).  Judgment was entered in defendants' favor after they prevailed on a motion to dismiss. (Docket No. 24.)  Dismissals based on the expiration of the statute of limitations are treated as dismissal on the merits for the purpose of awarding attorneys' fees.  See Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 228 (1995) ("The rules of finality . . . treat a dismissal on statute-of-limitations grounds the same way they treat a dismissal for failure to state a claim, for failure to prove substantive liability, or for failure to prosecute: as a judgment on the merits."); McNabb v. Yates, 576 F.3d 1028, 1030 (9th Cir. 2009) ("A disposition is 'on the merits' if the district court either considers and rejects the claims or determines that the underlying claim will not be considered by a federal court.").  Accordingly, defendants are the prevailing party in this action.

        B.    "On the Contract"

        "California courts liberally construe 'on a contract' to extend to any action '[a]s long as an action "involves" a contract and one of the parties would be entitled to recover attorney[s'] fees under the contract if that party prevails in its lawsuit.'"  In re Baroff, 105 F.3d 439, 442-43 (9th Cir. 1997) (quoting Milman v. Shukhat, 22 Cal. App. 4th 538, 545 (1994)) (alterations in original).

        The contracts upon which this action was brought each contain provisions regarding attorneys' fees and costs.  The Buy-Out Agreement dated April 30, 2003, provides:

5

**Attorneys' Fees.**  In the event of any controversy, claim or dispute between the parties hereto, arising out of or relating to this Agreement or the breach thereof, the prevailing party shall be entitled to recover from the losing party reasonable expenses, attorney's fees, and costs.

(Compl. Ex. D at 91.)  The Stock Purchase Agreement dated March 7, 2005, provides:

**Attorneys' Fees.** . . . In any action at law or equity to enforce any of the provisions or rights under this Agreement, including any actions accruing pursuant to "drag along" rights or obligations, the unsuccessful party to such litigation, as determined by the court in any final judgment or decree, shall pay the successful party or parties all costs, expenses and reasonable attorney fees incurred therein by such party or parties (including without limitation such costs, expenses and fees on any appeal or in connection with any bankruptcy proceeding), and if the successful party recovers judgment in any such action or proceeding, such costs, expenses and attorneys' fees shall be included in and as part of such judgment.

(Id. Ex. C at 41.)  The Promissory Note dated March 8, 2005, provides that:

14.  In the event of any arbitration or suit or action under or in connection with this Note or the Security Agreement, the prevailing party shall be entitled to recover, in addition to its statutory costs and expenses, its attorneys' fees incurred incident to such proceeding including attorneys' fees incurred prior to and at trial and on any appeal.

(Id. Ex. E at 96.)

Under these three agreements, the prevailing party is entitled to recover its attorneys' fees and costs for suits arising out of or in connection with the contracts.  Although plaintiff did not bring an action to enforce these agreements, it did seek declaratory judgment on their validity.  The action therefore falls within the broad terms of the contract language and "involves" the contracts for the purposes of section 1717.

6

1   See In re Baroff, 105 F.3d at 442-43.

2          Plaintiff's argument that it did not bring suit on the
3   contract and therefore would not have been entitled to attorney
4   fees under the contract if it had prevailed on the merits is
5   mistaken.   "According to the California Supreme Court, it is well
6   settled that section 1717 allows the recovery of attorneys' fees
7   'even when the party prevails on grounds the contract is
8   inapplicable, invalid, unenforceable or nonexistent, if the other
9   party had been entitled to attorneys' fees had it prevailed.'"
10  VSL Corp. v. Gen. Techs., No. C 96-20446, 1998 WL 124208, at *4
11  (N.D. Cal. Jan. 5, 1998) (quoting Hsu v. Abbara, 9 Cal. 4th 863,
12  870 (1995)).   The availability of attorneys' fees under section
13  1717 is thus based on mutuality.   A prevailing party may recover
14  attorneys' fees on the basis that, had the opposing party
15  prevailed, the opposing party would have been entitled to
16  attorneys' fees.   See Hsu, 9 Cal. 4th at 870 ("The statute would
17  fall short of [its] goal of full mutuality of remedy if its
18  benefits were denied to parties who defeat contract claims by
19  proving that they were not parties to the alleged contract or
20  that it was never formed.").

21          Had plaintiff prevailed in this case by proving that
22  the underlying contracts were invalid, plaintiff still could have
23  requested attorneys' fees based upon the contract provisions.
24  The court would have examined whether defendants would have been
25  entitled to attorneys' fees if they had prevailed on the merits
26  by showing the contracts were valid and binding on plaintiff.
27  California caselaw is clear that the "obligation to pay attorney
28  fees incurred in the enforcement of a contract includes

7

attorneys' fees incurred in defending against a challenge to the underlying validity of the obligation." <u>Siligo v. Castellucci</u>, 21 Cal. App. 4th 873, 878 (6th Dist. 1994) (internal quotation marks and citation omitted); <u>see also</u> <u>Gilbert v. World Sav. Bank, FSB</u>, No. C 10-05162, 2011 WL 995966, at *2 (N.D. Cal. Mar. 21, 2011) (awarding defendant attorneys' fees where plaintiff brought suit challenging the underlying validity of a mortgage note and deed of trust).  Had the court reached the contract interpretation question, defendants would have thus been entitled to attorneys' fees because the fees would have been incurred against plaintiff's challenge to the underlying validity of the contracts.  Because of mutuality, if plaintiff had prevailed, it would have also been entitled to attorneys' fees pursuant to section 1717.

Here, in order to apply mutuality under section 1717, the court's analysis must come full circle due to the unusual combination of circumstances in this case -- the fact that plaintiff brought this action as a declaratory judgment to have the underlying contracts invalidated along with the fact that defendant prevailed on statute of limitations grounds.  Applying mutuality, defendants are entitled to attorneys' fees if plaintiff would have been entitled to attorneys' fees had it prevailed.  As discussed above, plaintiff would have been entitled to attorneys' fees because defendants would have been entitled to attorneys' fees had they prevailed on the merits of the underlying contracts.  Defendants are thus entitled to attorneys' fees under section 1717 mutuality for prevailing on statute of limitations grounds because they ultimately would have

been entitled to attorneys' fees had they ultimately prevailed on the merits of the contracts themselves.  Accordingly, this action was brought "on a contract" for the purposes of applying section 1717 and defendants are entitled to recover attorneys' fees.

C.   Request to Delay Motion for Attorneys' Fees

Federal Rule of Civil Procedure 54(d) provides in part that: "If an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved."  Fed. R. Civ. P. 54(d).  Plaintiff has filed a notice of appeal as to the court's Order on Motion to Dismiss and Order on Motion for Reconsideration.  (Docket No. 34.) Plaintiff requests that the court stay defendants' motion for attorneys' fees pending the outcome of the appeal.

District courts "retain[] the power to award attorneys' fees after the notice of appeal from the decision on the merits ha[s] been filed."  Masalosalo by Masalosalo v. Stonewall Ins. Co., 718 F.2d 955, 957 (9th Cir. 1983).  This "prevent[s] postponement of fee consideration until after the circuit court mandate, when the relevant circumstances will no longer be fresh in the mind of the district court judge."  Id.

Plaintiff's sole justification for its request that the court delay awarding attorneys' fees is that "judicial economy will be best served if this Motion is stayed pending the outcome of the appeal."  (Opp'n to Mot. for Att'ys Fees at 5:22-23.) Although an award of attorneys' fees would have to be vacated if the judgment is reversed, this is no different than any other

9

case in which judgment is appealed and the prevailing party is awarded attorneys' fees.

The court is in a much better position at the present time, when the details of the proceedings are fresh in its mind, to judge the expertise and time required by defense counsel to prevail in this case than it would be when the appeal has been decided. Judicial economy would therefore not be served by requiring the court to revisit cases years after they were initially decided for the sole purpose of awarding attorneys' fees. The court declines to exercise its discretion to stay the present motion for attorneys' fees pending the outcome of the appeal.

D. Judicial Estoppel

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001). A court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings," and to "protect against a litigant playing fast and loose with the courts." Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990).

In New Hampshire v. Maine, the United States Supreme Court listed three factors that courts may consider in determining whether to apply the doctrine of judicial estoppel in a particular case: first, whether a party's later position would

be "clearly inconsistent" with its earlier position; second, whether judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and third, whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.[1] New Hampshire, 532 U.S. at 750-51.

The first New Hampshire factor requires a finding that a party's later position is "clearly inconsistent" with its earlier position. Id. at 750. Plaintiff argues that "Defendants successfully convinced this Court that it should not make any determination on the validity of the agreements at issue," and should therefore "be bound by their actions and precluded from seeking affirmative relief under these same agreements." (Opp'n to Mot. for Att'ys Fees at 7:25-27.) If the award of attorneys' fees were predicated upon the court finding that the underlying agreements were valid and binding on both parties, plaintiff's argument would be more persuasive. The court, however, is not required to find that plaintiff is bound by the underlying contracts in order to award attorneys' fees in this case.

Even in cases in which the court has held that no valid contract existed, it has nevertheless awarded attorneys' fees to the prevailing part. See Hsu, 9 Cal. 4th at 876. Denying attorneys' fees in cases in which the underlying contract is

---

[1]    In enumerating these factors, the Court noted that they were not establishing inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. New Hampshire, 532 U.S. at 751. Additional considerations may thus inform the doctrine's application in specific factual contexts. Id.

found to be invalid would fail to achieve section 1717's goal of "full mutuality of remedy if its benefits were denied to parties who defeat contract claims by proving they were not parties to the alleged contract or that it was never formed."  Id. at 870.

Plaintiff cites no authority for its position that a party that prevails based on the statute of limitations is not entitled to fees based on the doctrine of judicial estoppel.  The court is aware of at least two cases holding that a defendant who prevails on the statue of limitations is entitled to fees pursuant to California Civil Code section 1717.  See, e.g., Grolsche Bierbrouwerij Nederland, B.V. v. Dovebid, Inc., No. C 11-00763, 2011 WL 5080175, at *2-3 (N.D. Cal. Oct. 26, 2011) (awarding attorneys' fees to defendant pursuant to section 1717 after defendant prevailed based on statute of limitations defense); VSL Corp., 1998 WL 124208 at *4 (same).  Because the court is not required to find the underlying contracts valid in order to enforce their attorneys' fee provisions, defendants' motion for attorneys' fees does not present a legal position that is "clearly inconsistent" with their earlier position that plaintiff's claim was barred by the statute of limitations. Precluding defendants' recovery of attorneys' fees based on judicial estoppel would therefore be inappropriate in this matter.

E.   Lodestar Calculation

The purpose of California Civil Code section 1717 is "to establish uniform treatment of fee recoveries in actions on contracts containing attorney fee provisions." PLCM Grp. v. Drexler, 22 Cal. 4th 1084, 1094-95 (2000) (quoting Santisas v.

Goodin, 17 Cal. 4th 599, 616 (1998)).  To achieve this goal, the trial court is given "broad authority to determine the amount of a reasonable fee."  Id. at 1095 (citing Int'l Indus., Inc. v. Olen, 21 Cal. 3d 218, 224 (1978); see also Montgomery v. Bio-Med Specialties, Inc., 183 Cal. App. 3d 1292, 1297 (4th Dist. 1986) (providing that the trial court has "wide latitude in determining the amount of an award of attorneys['] fees").  In exercising this authority, the court is primarily guided by principles of equity.  See Beverly Hills Props. v. Marcolino, 221 Cal. App. 3d Supp. 7, 12 (Super. App. 1990) ("[T]he award of attorney[s'] fees under section 1717, as its purposes indicate, is governed by equitable principles." (citing Int'l Indus., 21 Cal. 3d at 224)).

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate."  PLCM Grp., 22 Cal. 4th at 1095.  "The reasonable hourly rate is that prevailing in the community for similar work."  Id. (citing Margolin v. Reg'l Planning Comm'n, 134 Cal. App. 3d 999, 1004 (2d Dist. 1982)).  After calculating the lodestar, the trial court "shall consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the section 1717 award so that it is a reasonable figure."  Id. at 1095-96 (quoting Sternwest Corp. v. Ash, 183 Cal. App. 3d 74, 77 (2d Dist. 1986)).  Defendants propose that the base lodestar figure of $127.206.96 would be an appropriate amount for attorneys' fees and untaxed costs in this case.  (Mot. for Att'ys Fees at 1:19-20.)

1.   Reasonable Hourly Rates

1   A reasonable hourly rate is the prevailing rate in the

2   community for similar work performed by attorneys of comparable

3   skill, experience, and reputation.  Moreno v. City of Sacramento,

4   534 F.3d 1106, 1111 (9th Cir. 2008).  "The party requesting the

5   fees must produce satisfactory evidence in addition to the

6   attorney's own affidavits or declarations that the rates are in

7   line with community rates."  Bd. of Trs. v. Core Concrete Const.,

8   Inc., No. C 11-02532, 2012 WL 380304, at *6 (N.D. Cal. Jan. 17,

9   2012) (citing Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984));

10  see also Gorman v. Tassajara Develop. Corp., 178 Cal. App. 4th

11  44, 98 (6th Dist. 2009) (noting that the "burden is on the party

12  seeking attorney fees to prove that the fees it seeks are

13  reasonable").

14  The relevant legal community is traditionally "the

15  forum in which the district court sits," Camacho v. Bridgeport

16  Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008), which in this case

17  is the Eastern District of California.  "[R]ates outside the

18  forum may be used if local counsel was unavailable, either

19  because they are unwilling or unable to perform because they lack

20  the degree of experience, expertise, or specialization required

21  to handle properly the case."  Barjon v. Dalton, 132 F.3d 496,

22  500 (9th Cir. 1997).

23  During oral arguments, Mr. Macauley explained that his

24  firm, San Francisco-based Nossaman LLP, has represented defendant

25  Magnum since at least 2005 and had first hand familiarity with

26  the dispute between the parties over the last six years on the

27  contracts in question.  When plaintiff finally filed for

28  declaratory relief, Magnum naturally turned to Nossaman for

14

representation because the firm was involved, having handled the initial buy-out transaction.  The attorneys at Nossaman therefore had already had developed experience and expertise on the facts underlying this specific case.  If defendants had instead turned to a Sacramento-based firm, with presumably lower hourly rates, the attorneys would have had to spend significantly more time familiarizing themselves with the historical facts surrounding the disagreement.  While it is impossible to surmise exactly how much time this would have taken a new firm, the additional hours would have at least partially offset the higher hourly rate charged by Nossaman's attorneys.[2]  Because of counsel's prior dealings with both parties in this dispute, it is appropriate to apply the prevailing rates for the community in which counsel is located -- San Francisco.  See PLCM Grp. v. Drexler, 22 Cal. 4th 1084, 1096 (finding no error in awarding "prevailing market rate for comparable legal services in San Francisco, where counsel is located" in a case heard in Los Angeles)

Here, defendants seek the following hourly rates: $535 per hour for the services of David Kimport; $440 per hour for Brendan Macaulay; $410 per hour for Danielle Gensch; $400 per hour for John Hansen;  $340 per hour for James Vorhis, Chi Soo Kim, and Sayed Ahmed; $270 per hour for Katy Young; $250 per hour

---

[2]     The court acknowledges that defendants cannot both turn to an out-of-forum firm based on their experience with the case and bill for research that a local firm would not have needed to do based on familiarity with the forum.  Accordingly, as discussed further below, the court has reduced counsel's billed hours to exclude time spent researching the local rules and reviewing the court's calendaring procedures and deadlines.

for Sarah Andropoulos; and $165 per hour for Jane Towell.[3]

With respect to the prevailing market rate for services rendered by himself, Mr. Macaulay submitted his own declaration establishing the following facts.  Mr. Macaulay has been practicing law in the area of complex business litigation for nineteen years.  (Macauley Decl. ¶ 2 (Docket No. 32).)  He graduated from Duke University School of Law in 1992 and has been admitted to the United States District Courts for the Central, Southern, Eastern, and Northern Districts of California, and the Ninth Circuit Court of Appeals.  (Id.)  Mr. Macaulay has submitted "many fee requests in state and federal courts" and "no court has ever opined that [his] rate was too high."  (Id. ¶ 4.)

Defendants provide supporting evidence on the prevailing rates awarded under attorneys' fee provisions by courts in "Northern California."  Based on the list of hourly rates awarded adjusted for experience level, Mr. Macaulay's rate of $440 per hour is at or below the prevailing rate for attorneys in Northern California with similar years of experience.  The reasonableness of Mr. Macaulay's rate is also confirmed by the court's independent research.  See, e.g., Armstrong v. Brown, 805 F. Supp. 2d 918, 921 (N.D. Cal. 2011) (awarding $700 per hour for 1978 law school graduate in ADA case); Sierra Club v. E.P.A., 625

---

[3]    Defendants did not provide significant biographical information on the attorneys, other than Mr. Macaulay, who worked on this case.  From what the court can gather from the papers, Katy Young, James Vorhis, Sarah Andropoulos, Cho Soo Kim, and Sayed Ahmed are associates; David Kimport, Danielle Gensch, and John Hansen are partners; and Jane Towell is a Research Librarian.  (See Anastassiou Decl. Ex. B.)

F. Supp. 2d 863, 867 (N.D. Cal. 2007) (finding prevailing hourly rate in San Francisco for experienced attorney to be $450 per hour).  Based on this evidence, the requested rates for the other partners working on the matter, Mr. Kimport, Ms. Gensch, and Mr. Hansen, are also within the range for prevailing market rates in San Francisco.

Neither party has provided the court with any evidence establishing what the prevailing rate is for associate attorneys or paralegals in San Francisco.  The court thus relies on its own research to determine whether counsel's proposed rates ranging between $250 and $340 per hour for associates and $165 per hour for a research librarian[4] are reasonable given the prevailing rate within the San Francisco legal community.  These rates appear to fall within the prevailing rate in San Francisco.  See Caplan v. CNA Fin. Corp., 573 F. Supp. 2d 1244, 1249 (N.D. Cal. 2008) (approving hourly rate of $350 for a sixth-year associate, $330 for a fourth-year associate, and $200 for law student clerks); Loretz v. Regal Stone, Ltd., 756 F. Supp. 2d 1203, 1211 (N.D. Cal. 2010) (approving rate of $350 per hour for associates, and $225 per hour for paralegal); Oster v. Standard Ins. Co., 768 F. Supp. 2d 1026, 1035 (N.D. Cal. 2011) (approving $400 per hour for associates and $150 per hour for paralegals in ERISA action); Armstrong, 805 F. Supp. 2d at 921 (awarding $480 per hour for associate who graduated in 2006 and $180 per hour for law students and litigation assistants in ADA case).

---

[4]    Without further guidance, the court will treat the time billed by Ms. Towell, counsel's research librarian, as similar to that of a paralegal for the purpose of awarding fees.

"The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1397-98 (9th Cir. 1992). Plaintiff presents information about the prevailing rates in Salinas and outdated caselaw on the prevailing rate in Sacramento. This evidence does not address the prevailing rate for legal services in San Francisco and therefore fails to challenge the reasonableness of defense counsel's rates.

Accordingly, in light of counsel's prior work with defendants on this matter, the high quality of the briefs submitted by defendants, the complexity of the underlying action, and the declaration submitted by Mr. Macaulay, the court finds that defendants' proposed rates are reasonable given the prevailing rates in San Francisco.

2.   <u>Reasonable Hours Expended</u>

Under California law, a court determining the number of hours reasonably expended on a case "must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." <u>Ketchum v. Moses</u>, 24 Cal. 4th 1122, 1132 (2001) (quoting <u>Serrano v. Priest</u>, 20 Cal. 3d 25, 48 (1977)). The district court may exclude from the initial fee calculation hours that were "excessive, redundant, or otherwise unnecessary." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983).

Plaintiff objects to the number of hours defense counsel expended on this case on several grounds, including that:

18

(1) defense counsel spent significantly more time working on the case than plaintiff's counsel; (2) counsel billed for administrative tasks that should not be compensated; (3) counsel utilized vague and ambiguous block billing; (4) duplicate billing by multiple attorneys should be reduced or striken; and (5) counsel spent too much time on legal research.

In response to the aggregate number of hours that defense counsel has billed, plaintiff argues that it is excessive in comparison with the amount of time that plaintiff's counsel spent on the motions to dismiss. (Opp'n to Mot. for Att'ys Fees at 16:23-17:9.) Defense counsel spent 270.95 hours on this action compared to the 96 hours that plaintiff's counsel spent on the two underlying substantive motions. (Id. at 16:26-17:4.) Plaintiff argues that the substantive motions were relatively routine motions that should not have taken 270 hours to complete.

The court notes that plaintiff is comparing two separate figures: the time that defendant spent on the action as a whole, including the motion for attorneys' fees, versus the time plaintiff spent on the substantive motion to dismiss and motion for reconsideration. Defendants are entitled to be compensated for all appropriate attorneys' fees stemming from their defense of this action, not only to the expenses relating to the substantive motions. For example, other tasks that defense counsel performed after being served with the Complaint included: ensuring that a litigation hold was put in place; communicating with plaintiff's counsel regarding the deadline to respond; communicating with the client regarding the facts of the case; strategizing about the appropriate response; analyzing

19

jurisdiction and venue; reviewing the Complaint and all of the attached documents; and reviewing the history of the transaction. (Macaulay Supp'l Decl. ¶ 8 (Docket No. 42).)

The amount of time billed by defense counsel additionally reflects the difficulty of the issues raised in this action.  Plaintiff's claim that this action was based on a "simple" statute of limitations issue oversimplifies the underlying litigation.  Although the merits of the Complaint were technically never addressed by the court, plaintiff made repeated arguments based on the merits of its claims -- such as the lack of legends on the stock certificate, enforceability of drag-along rights, validity of the agreements at issue, and certification share issues.  The fact that defense counsel proceeded to research and address such issues should therefore come as no surprise to plaintiff.  Defendants also explain that "many of Yenidunya's arguments lacked any legal support, or were contrary to law.  An argument that Yenidunya could craft without authority in 10 minutes might require hours of research/briefing to debunk."  (Reply to Opp'n to Mot. for Att'ys Fees at 9:25-10:2.) The court is sympathetic with defendants' contention that there were a significant number of complex legal issues that were raised by plaintiff throughout the litigation that likely took defense counsel many hours to research and brief.

"In challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence.  General arguments that fees claimed are excessive, duplicative, or

20

1  unrelated do not suffice." Premier Med. Mgmt., Inc. v. Cal. Ins.

2  Guarantee Ass'n, 163 Cal. App. 4th 550, 564 (2d Dist. 2008).

3  Plaintiff does not satisfy this burden because it does not

4  identify specific entries or activies as excessive.[5]  Absent

5  plaintiff providing specific areas in which hours should be cut,

6  the court finds that the total time expended by defense counsel

7  was reasonable.

8          As to the specific type of tasks billed, plaintiff

9  argues that counsel billed tasks normally performed by paralegals

10  or legal secretaries.  (Opp'n to Mot. for Att'ys Fees at 17:10-

11  14.)  Specifically, it identifies reviewing the local rules and

12  calculating motion deadlines as such administrative tasks.  The

13  court finds that the time expended to become familiar with the

14  Eastern District Local Rules is in the nature of "general

15  education" and should not have been billed to the client. See

16  generally, e.g., Perdue v. City Univ. of N.Y., 13 F. Supp. 2d

17  326, 346 (E.D.N.Y. 1998) ("Although Perdue's attorneys are

18  entitled to reasonable compensation for time spent in researching

19  employment discrimination law, they should not be fully

20  compensated for their general education.").  Time spent

21  calculating motion deadlines should similarly not be charged to

22  the client as it is a primarily administrative task.  Plaintiff

23  does not quantify how large of a reduction should be applied

24

25      [5]  Plaintiff does provide annotated copies of defense
   counsels' billing statements in which entries are color-coded by
26  activity.  (See Anastassiou Decl. Ex. D.)  This does not aid the
   court in determining whether counsel spent excessive time on the
27  matter as a whole or on any one activity.  Based on plaintiff's
   annotations, it appears that the only activity conducted by
28  defense counsel that it approves of is the actual drafting of
   defendants' motions.

under this objection.  Defendants estimate that "no more than 1-2 hours" were spent on such tasks.  (Reply to Opp'n to Mot. for Att'ys Fees at 11:2-3.)  This estimate appears reasonable based on the court's review of the billing descriptions.  Accordingly, the court will reduce Mr. Macaulay's billable hours by two hours.

In support of its argument that defense counsel utilized vague and ambiguous block billing,[6] plaintiff claims that "multiple 'block entries' make it impossible for Plaintiff and the Court to ascertain exactly how much time [defense counsel] spent on each of the separate tasks."  (Opp'n to Mot. for Att'ys Fees at 17:18-20.)  For example, plaintiff notes that on July 7, 2011, Mr. Macaulay billed 4.10 hours of time under one entry which related to the performance of nine separate tasks.  (Id. at 17:17-18.)  Other than this entry, plaintiff does not specifically object to any other entry but requests that the entries should be "substantially reduced or stricken entirely."  (Opp'n to Mot. for Att'ys Fees at 18:15-16.)

A district court should refrain from reducing fees until it first determines whether "'sufficient detail has been provided so that [the Court] can evaluate what the lawyers were doing and the reasonableness of the number of hours spent on those tasks.'"  Fitzgerald v. City of L.A., No. 03-1876, 2009 WL 960825, at *8 (C.D. Cal. Apr. 7, 2009) (quoting Smith v. District of Columbia, 466 F. Supp. 2d 151, 158 (D.D.C. 2006)) (alteration

---

[6]     "'Block billing' is 'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'"  Welch v. Metro. Life Ins. Co., 480 F.3d 942, 945 n.2 (9th Cir. 2007) (quoting Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1554 n.15 (10th Cir. 1996)).

in original).   The court must be "practical and realistic"
regarding how attorneys operate; if attorneys "have to document
in great detail every quarter hour or half hour of how they spend
their time . . . their fee[s] . . . will be higher, and the
lawyers will simply waste precious time doing menial clerical
tasks."   <u>Smith</u>, 466 F. Supp. 2d at 158.

In this case, the vast majority of the block billing
involves the grouping of highly-related tasks that rarely cover
more than a few hours.   See <u>Fitzgerald</u>, 2009 WL 960825, at *8
(finding block-billing acceptable where "[m]any of [the] entries
identified as block-billing are actually different parts of the
same task"); <u>cf.</u> <u>Role Models Am., Inc. v. Brownlee</u>, 353 F.3d 962,
971 (D.C. Cir. 2004) (finding block-billed entries unreasonable
because they "include[d] time spent on bankruptcy matters, which
ha[d] nothing to do with th[e] appeal" and "prevent[ed] . . .
verifying that [appellant] deducted the proper amount of time").
Furthermore, in most of counsel's entries, the court is well-
equipped to "compare the hours expended against the tasks and
assess the reasonableness of those tasks."   <u>Fitzgerald</u>, 2009 WL
960825, at *8.   Accordingly, having examined counsel's block
billing, the court does not find it necessary to reduce the hours
billed.

Plaintiff next argues that duplicate billings by
multiple attorneys should be reduced or striken.   (Opp'n to Mot.
for Att'ys Fees at 18:17-26.)   Plaintiff contends that defense
counsel's use of nine different attorneys on the case resulted in
excessive and duplicative internal communications between
counsel.   (<u>Id.</u> at 18:18-23; Anastassiou Decl. ¶ 13 (Docket No.

40).)  Plaintiff specifically notes that, as a result of this
duplicative work, in one of the invoices in which $20,617.25 in
fees was claimed by defendants, only $528.00 was billed for
drafting the motion to dismiss.[7]  (Macaulay Decl. Ex. A.)

While "[c]oncerns about overstaffing are a relevant
consideration," determining whether there has been unnecessary
duplication often requires a difficult exercise of "judgment and
discretion, considering the circumstances of the individual
case."  Fitzgerald, 2009 WL 960825 at *9 (citing Democratic Party
of Wash. State v. Reed, 388 F.3d 1281, 1286-87 (9th Cir. 2004)).
In this case, the majority of the work was done by two attorneys,
with five of the other billers working on the case for less than
nine hours each.  (Reply to Opp'n to Mot. for Att'ys Fees at
11:6-12.)  This suggests that overstaffing was not a significant
cause of duplication.  Other than simply highlighting all
instances in which defense counsel billed for time spent on
interoffice correspondence and what it claims were duplicative
efforts in reviewing the Complaint or attorney work product,
plaintiff provides no persuasive reason why having two or three
attorneys discuss strategy on the case or review the Complaint
and attorney work product was unreasonable.  See, e.g., Moreno,
534 F.3d at 1113 ("Findings of duplicative work should not become
a shortcut for reducing an award without identifying just why the
requested fee was excessive . . . .");  Jefferson v. Chase Home

---

[7]      In his supplemental declaration, Mr. Macaulay explains
that the month to which plaintiff is referring was the first
month following the Complaint being filed.  (Macaulay Supp'l
Decl. ¶ 8 (Docket No. 41).)  It is therefore appropriate that
counsel spent time reviewing the Complaint and researching the
motion to dismiss prior to beginning to draft the motion.

Fin., No. 06-6510, 2009 WL 2051424, at *4 (N.D. Cal. July 10, 2009) ("Chase has identified few substantive areas of duplicative effort, and does not make a persuasive case that the case was overstaffed. . . . [B]ecause the bulk of the hours spent were from a few attorneys, this does not appear unreasonable."); see also Fitzgerald, 2009 WL 960825, at *8 ("The Court does not find the presence of lawyers at court meetings to be excessive or unnecessarily duplicative in this case . . . Plaintiffs typically only seek fees for two or three lawyers at those meetings.").

Finally, with regard to the amount of research performed by defense counsel, plaintiff contends that the "attorneys at Nossaman claim to have extensive experience with the underlying subject matter, which would indicated that should [sic] already be well versed on the case law for the underlying subject." (Anastassiou Decl. ¶ 13f.) Plaintiff does not identify any specific research task that it deems unnecessary, but rather highlights each instance in which defense counsel billed for time spent conducting legal research on the case. Legal research is a core function of an attorney's role in litigating a case. This case presented a number of novel and complex issues that likely required significant research to respond to. After reviewing the invoices, the court finds that the time defense counsel billed for legal research was not unnecessarily excessive and was favorably reflected in the quality of defendants' briefs.

Defendants have estimated that Mr. Macaulay will spend an additional 25 hours after January 1 to complete the motion on attorneys' fees, prepare a Reply, and prepare for and attend the

1   hearing.  (Mot. for Att'ys Fees at 9:4-6.)  Plaintiff has not

2   objected to this request.  The court will therefore add 25 hours

3   to Mr. Macaulay's billed time.

4         After reviewing plaintiff's objections to the number of

5   hours expended by defense counsel on this action, the court will

6   reduce Mr. Macaulay's billed hours from 163.9 hours to 161.9

7   hours based on the inclusion of administrative tasks that should

8   not have been billed to the client.  The court will also increase

9   Mr. Macaulay's billed hours from 161.9 to 186.9 to reflect work

10  that has been completed after counsel's last-submitted billing

11  statement.  The court finds that the remaining hours were

12  reasonably expended defending this action.

13               3.   Adjustments To The Lodestar Figure

14        After performing the lodestar calculations, the court

15  must "consider whether the total fee award so calculated under

16  all of the circumstances is more than a reasonable amount and, if

17  so, [must] reduce the . . . award so that it is a reasonable

18  figure."  PLCM Grp., 22 Cal. 4th at 1095-96.  To make this

19  determination, the court considers "a number of factors,

20  including the nature of the litigation, its difficulty, the

21  amount involved, the skill required in its handling, the skill

22  employed, the attention given, the success or failure, and other

23  circumstances of the case."  Id. at 1096 (quoting Melnyk v.

24  Robledo, 64 Cal. App. 3d 618, 623-624 (2d Dist. 1976)).

25        Multiplying the reasonable hours expended by defense

26  counsel by the hourly rates approved by the court, the lodestar

27  figure amounts to $125,324.75.  The table below illustrates this

28  calculation:

| Attorney | Time Billed | | Hourly Rate | | Total |
|---|---|---|---|---|---|
| David Kimport | 36.7 hours | x | $ 535 | = | $ 19634.50 |
| Brendan Macaulay | 186.9 hours | x | $ 440 | = | $ 82236 |
| John Hansen | 14.9 hours | x | $ 400 | = | $ 5960 |
| Katy Young | 21.5 hours | x | $ 270 | = | $ 5805 |
| James Vorhis | 1.4 hours | x | $ 340 | = | $ 476 |
| Sarah Andropoulos | 4.5 hours | x | $ 250 | = | $ 1125 |
| Chi Soo Kim | 1.8 hours | x | $ 340 | = | $ 612 |
| Danielle Gensch | 8.5 hours | x | $ 410 | = | $ 3485 |
| Sayed Ahmed | 17.5 hours | x | $ 340 | = | $ 5950 |
| Jane Towell | 0.25 hours | x | $ 165 | = | $ 41.25 |
| | | | **Total** | **=** | **$ 125324.75** |

There are several factors that the court could used to apply a negative multiplier to the lodestar amount, <u>Morales v. City of San Rafael</u>, 96 F.3d 359, 364 n.9 (9th Cir. 1996), but there is a strong presumption that the lodestar amount is reasonable.  <u>Fischer v. SJB-P.D. Inc.</u>, 214 F.3d 1115, 1119 n.4 (9th Cir. 2000).  Given the nature and difficulty of this litigation, the number of hours reasonably expended by defendants' attorneys, the skill demonstrated by those attorneys, and defendants' overall victory on the underlying claims, the court finds that the lodestar figure need not be adjusted. Therefore, the court will award defendants $125,324.75 in attorney's fees.

iv.  <u>Untaxed Costs</u>

Defendants also ask that the award include payment for a number of costs and expenses.  Out-of-pocket costs and expenses incurred by an attorney that would normally be charged to a fee-

paying client are recoverable as attorneys' fees.  <u>United</u>
<u>Steelworkers of Am. v. Phelps Dodge Corp.</u>, 896 F.2d 403, 407 (9th
Cir. 1990).  Defendants' request includes $1,002.21 in costs.
Plaintiff notes that some of the costs "are perhaps more properly
considered overhead," but does not object to them because they
"are not unreasonable" and "not terribly substantial."
(Anastassiou Decl. ¶ 16.)  Accordingly, the court will award
defendants untaxed costs of $1,002.21.

        IT IS THEREFORE ORDERED that defendants' motion for
attorneys' fees be, and the same hereby is, GRANTED in the
amounts of $125,324.75 in attorneys' fees and $1,002.21 in
untaxed costs.

DATED:    February 16, 2012

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE