1

2

3

4

5

6

7

8                  UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10                      ----oo0oo----

11

12   YENIDUNYA INVESTMENTS, LTD., a        NO. CIV. 2:11-1787 WBS
     Cyprus, EU Corporation;
13
              Plaintiff,              MEMORANDUM AND ORDER RE:
14                                    MOTION FOR ATTORNEYS' FEES
         v.
15
     MAGNUM SEEDS, INC., a
16   California Corporation; and
     GENICA RESEARCH CORPORATION, a
17   Nevada Corporation;

18            Defendants.
     _____/
19
                        ----oo0oo----
20
              Plaintiff Yenidunya Investments, Ltd. brought this
21
     action against defendants Magnum Seeds, Inc. ("Magnum") and
22
     Genica Research Corporation ("Genica") for declaratory relief and
23
     accounting arising out of defendants' allegedly wrongful
24
     violation of plaintiff's rights as a Magnum shareholder.
25
     Presently before the court is defendants' motion for attorneys'
26
     fees.
27
     ////
28
                                1

I.    <u>Factual and Procedural Background</u>

          In October 2003, Spiros Spirou & Co. ("SS & Co.")
obtained common stock in Magnum by converting a $2,267,995.00
loan into 2,267,995 shares of Magnum.  (Compl. ¶ 7 (Docket No.
1).)  As a shareholder, SS & Co. signed an "Amendment to Buy-Out
Agreement," which contained a "call-option" that required any
shareholder to sell its shares back to Magnum when certain
conditions were met.  (<u>Id.</u> ¶ 15.)  The Amendment also
incorporated by reference a "Buy-Out Agreement," which contained
a prevailing party attorneys' fee clause.  (<u>Id.</u> Ex. D at 91.)
Both the Amendment to the Buy-Out Agreement and the Buy-Out
Agreement were attached to the Complaint.  (<u>Id.</u> Ex. D.)

          In late October 2003, SS & Co. transferred the
2,267,995 shares of Magnum common stock to plaintiff, which is an
affiliated company of SS & Co.  (<u>Id.</u> ¶ 8.)  In March 2005, Genica
offered to purchase all of the outstanding shares of Magnum from
the existing shareholders.  (<u>Id.</u> ¶ 13.)  In a "Stock Purchase
Agreement" dated March 7, 2005, Genica offered to pay plaintiff
$1,133,997.50 over a ten-year period.  (<u>Id.</u>)  Plaintiff declined
the offer to purchase its shares and never executed or delivered
the Stock Purchase Agreement.  (<u>Id.</u>)  All other Magnum
shareholders accepted Genica's offer to purchase their shares and
executed the Stock Purchase Agreement, triggering the call option
in the Amendment to the Buy-Out Agreement.  (<u>Id.</u>)  A "Promissory
Note" was delivered to plaintiff at closing pursuant to the Stock
Purchase Agreement.  (<u>Id.</u> ¶ 19.)  Both the Stock Purchase
Agreement and the Promissory Note were attached to the Complaint
and contain prevailing party attorneys' fee clauses.  (<u>Id.</u> Exs.

1  C, E.)

2           Over six years later, on July 6, 2011, plaintiff filed

3  for declaratory relief seeking to be recognized as a Magnum

4  shareholder.  (Docket No. 1.)  The Complaint asked the court for

5  "a declaration that neither the Stock Purchase Agreement, the

6  Promissory Note, the Buy-Out Agreement or the Amendment to Buy-

7  Out Agreement are valid and enforceable agreements with respect

8  to YENIDUNYA."  (Compl. ¶ 22.)

9           On August 11, 2011, defendants moved to dismiss

10  plaintiff's complaint on the ground that it was barred by the

11  statute of limitations.  (Docket No. 12.)  The court granted

12  defendant's motion on October 31, 2011, finding that the statute

13  of limitations had run because "the gravamen of [plaintiff's]

14  Complaint is that the Promissory Note was never a valid

15  contract."  (Oct. 31, 2011, Order at 9:7-9 (Docket No. 23).)  On

16  November 7, 2011, plaintiff moved for the court to reconsider its

17  prior order.  (Docket No. 25.)  The court denied plaintiff's

18  motion, explaining that plaintiff's claims were "barred by the

19  statute of limitations and that the time for the Court to make a

20  determination of the underlying legal issues had passed."  (Dec.

21  7, 2011, Order at 7:10-12 (Docket No. 29).)

22           Presently before the court is defendants' motion for

23  attorneys' fees pursuant to attorneys' fees clauses in the Buy-

24  Out Agreement, Stock Purchase Agreement, and Promissory Note.

25  (Docket No. 32.)  As the prevailing party, defendants seek to

26  recover $127,206.96 in attorneys' fees and costs for their work

27  defending this action.

28  ////

1  II.  <u>Discussion</u>

2        "A federal court sitting in diversity applies the law

3  of the forum state regarding an award of attorneys' fees." <u>Kona</u>

4  <u>Enters., Inc. v. Estate of Bishop</u>, 229 F.3d 877, 883 (9th Cir.

5  2000).  Because this case arises under diversity jurisdiction, 28

6  U.S.C. § 1332(a), the court must apply California law in deciding

7  plaintiff's motion for attorneys' fees and untaxed costs.

8        Although California law "ordinarily does not allow for

9  the recovery of attorneys' fees," California Civil Code section

10 1717 provides for an award of attorneys' fees where "the parties

11 contractually obligate themselves" to so compensate each other.

12 <u>Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.</u>, 250

13 F.3d 1234, 1237 (9th Cir. 2001) (citing Cal. Civ. Code § 1717;

14 <u>Trope v. Katz</u>, 11 Cal. 4th 274, 279 (1995)).  Section 1717

15 specifically instructs:

16        In any action on a contract, where the contract
          specifically provides that attorney[s'] fees and costs,
17        which are incurred to enforce that contract, shall be
          awarded either to one of the parties or to the prevailing
18        party, then the party who is determined to be the party
          prevailing on the contract, whether he or she is the
19        party specified in the contract or not, shall be entitled
          to reasonable attorney[s'] fees in addition to other
20        costs.

21 Cal. Civ. Code § 1717(a).  Defendants must therefore show that

22 they are the prevailing party and that the action was "on a

23 contract" that included an attorneys' fee provision.

24     A.  <u>Prevailing Party</u>

25        California Code of Civil Procedure section 1032(a)(4)

26 provides in part that the "'[p]revailing party' includes the

27 party with a net monetary recovery, a defendant in whose favor a

28 dismissal is entered, a defendant where neither plaintiff nor

                                4

defendant obtains any relief, and a defendant as against those
plaintiffs who do not recover any relief against that defendant."
Cal. Code Civ. Proc. § 1032(a)(4).  Judgment was entered in
defendants' favor after they prevailed on a motion to dismiss.
(Docket No. 24.)  Dismissals based on the expiration of the
statute of limitations are treated as dismissal on the merits for
the purpose of awarding attorneys' fees.  See Plaut v.
Spendthrift Farm, Inc., 514 U.S. 211, 228 (1995) ("The rules of
finality . . . treat a dismissal on statute-of-limitations
grounds the same way they treat a dismissal for failure to state
a claim, for failure to prove substantive liability, or for
failure to prosecute: as a judgment on the merits."); McNabb v.
Yates, 576 F.3d 1028, 1030 (9th Cir. 2009) ("A disposition is 'on
the merits' if the district court either considers and rejects
the claims or determines that the underlying claim will not be
considered by a federal court.").  Accordingly, defendants are
the prevailing party in this action.

      B.   "On the Contract"

     "California courts liberally construe 'on a contract'
to extend to any action '[a]s long as an action "involves" a
contract and one of the parties would be entitled to recover
attorney[s'] fees under the contract if that party prevails in
its lawsuit.'"  In re Baroff, 105 F.3d 439, 442-43 (9th Cir.
1997) (quoting Milman v. Shukhat, 22 Cal. App. 4th 538, 545
(1994)) (alterations in original).

     The contracts upon which this action was brought each
contain provisions regarding attorneys' fees and costs.  The Buy-
Out Agreement dated April 30, 2003, provides:

5

**Attorneys' Fees.** In the event of any controversy, claim or dispute between the parties hereto, arising out of or relating to this Agreement or the breach thereof, the prevailing party shall be entitled to recover from the losing party reasonable expenses, attorney's fees, and costs.

(Compl. Ex. D at 91.) The Stock Purchase Agreement dated March 7, 2005, provides:

**Attorneys' Fees.** . . . In any action at law or equity to enforce any of the provisions or rights under this Agreement, including any actions accruing pursuant to "drag along" rights or obligations, the unsuccessful party to such litigation, as determined by the court in any final judgment or decree, shall pay the successful party or parties all costs, expenses and reasonable attorney fees incurred therein by such party or parties (including without limitation such costs, expenses and fees on any appeal or in connection with any bankruptcy proceeding), and if the successful party recovers judgment in any such action or proceeding, such costs, expenses and attorneys' fees shall be included in and as part of such judgment.

(Id. Ex. C at 41.) The Promissory Note dated March 8, 2005, provides that:

14. In the event of any arbitration or suit or action under or in connection with this Note or the Security Agreement, the prevailing party shall be entitled to recover, in addition to its statutory costs and expenses, its attorneys' fees incurred incident to such proceeding including attorneys' fees incurred prior to and at trial and on any appeal.

(Id. Ex. E at 96.)

Under these three agreements, the prevailing party is entitled to recover its attorneys' fees and costs for suits arising out of or in connection with the contracts. Although plaintiff did not bring an action to enforce these agreements, it did seek declaratory judgment on their validity. The action therefore falls within the broad terms of the contract language and "involves" the contracts for the purposes of section 1717.

1  See <u>In re Baroff</u>, 105 F.3d at 442-43.

2         Plaintiff's argument that it did not bring suit on the
3  contract and therefore would not have been entitled to attorney
4  fees under the contract if it had prevailed on the merits is
5  mistaken.  "According to the California Supreme Court, it is well
6  settled that section 1717 allows the recovery of attorneys' fees
7  'even when the party prevails on grounds the contract is
8  inapplicable, invalid, unenforceable or nonexistent, if the other
9  party had been entitled to attorneys' fees had it prevailed.'"
10 <u>VSL Corp. v. Gen. Techs.</u>, No. C 96-20446, 1998 WL 124208, at *4
11 (N.D. Cal. Jan. 5, 1998) (quoting <u>Hsu v. Abbara</u>, 9 Cal. 4th 863,
12 870 (1995)).  The availability of attorneys' fees under section
13 1717 is thus based on mutuality.  A prevailing party may recover
14 attorneys' fees on the basis that, had the opposing party
15 prevailed, the opposing party would have been entitled to
16 attorneys' fees.  <u>See</u> <u>Hsu</u>, 9 Cal. 4th at 870 ("The statute would
17 fall short of [its] goal of full mutuality of remedy if its
18 benefits were denied to parties who defeat contract claims by
19 proving that they were not parties to the alleged contract or
20 that it was never formed.").

21        Had plaintiff prevailed in this case by proving that
22 the underlying contracts were invalid, plaintiff still could have
23 requested attorneys' fees based upon the contract provisions.
24 The court would have examined whether defendants would have been
25 entitled to attorneys' fees if they had prevailed on the merits
26 by showing the contracts were valid and binding on plaintiff.
27 California caselaw is clear that the "obligation to pay attorney
28 fees incurred in the enforcement of a contract includes

attorneys' fees incurred in defending against a challenge to the
underlying validity of the obligation." <u>Siligo v. Castellucci</u>,
21 Cal. App. 4th 873, 878 (6th Dist. 1994) (internal quotation
marks and citation omitted); <u>see also</u> <u>Gilbert v. World Sav. Bank,</u>
<u>FSB</u>, No. C 10-05162, 2011 WL 995966, at *2 (N.D. Cal. Mar. 21,
2011) (awarding defendant attorneys' fees where plaintiff brought
suit challenging the underlying validity of a mortgage note and
deed of trust).  Had the court reached the contract
interpretation question, defendants would have thus entitled
to attorneys' fees because the fees would have been incurred
against plaintiff's challenge to the underlying validity of the
contracts.  Because of mutuality, if plaintiff had prevailed, it
would have also been entitled to attorneys' fees pursuant to
section 1717.

        Here, in order to apply mutuality under section 1717,
the court's analysis must come full circle due to the unusual
combination of circumstances in this case -- the fact that
plaintiff brought this action as a declaratory judgment to have
the underlying contracts invalidated along with the fact that
defendant prevailed on statute of limitations grounds.  Applying
mutuality, defendants are entitled to attorneys' fees if
plaintiff would have been entitled to attorneys' fees had it
prevailed.  As discussed above, plaintiff would have been
entitled to attorneys' fees because defendants would have been
entitled to attorneys' fees had they prevailed on the merits of
the underlying contracts.  Defendants are thus entitled to
attorneys' fees under section 1717 mutuality for prevailing on
statute of limitations grounds because they ultimately would have

1  been entitled to attorneys' fees had they ultimately prevailed on

2  the merits of the contracts themselves.   Accordingly, this action

3  was brought "on a contract" for the purposes of applying section

4  1717 and defendants are entitled to recover attorneys' fees.

5        C.   <u>Request to Delay Motion for Attorneys' Fees</u>

6              Federal Rule of Civil Procedure 54(d) provides in part

7  that: "If an appeal on the merits of the case is taken, the court

8  may rule on the claim for fees, may defer its ruling on the

9  motion, or may deny the motion without prejudice, directing under

10 subdivision (d)(2)(B) a new period for filing after the appeal

11 has been resolved."   Fed. R. Civ. P. 54(d).   Plaintiff has filed

12 a notice of appeal as to the court's Order on Motion to Dismiss

13 and Order on Motion for Reconsideration.   (Docket No. 34.)

14 Plaintiff requests that the court stay defendants' motion for

15 attorneys' fees pending the outcome of the appeal.

16             District courts "retain[] the power to award attorneys'

17 fees after the notice of appeal from the decision on the merits

18 ha[s] been filed."   <u>Masalosalo by Masalosalo v. Stonewall Ins.</u>

19 <u>Co.</u>, 718 F.2d 955, 957 (9th Cir. 1983).   This "prevent[s]

20 postponement of fee consideration until after the circuit court

21 mandate, when the relevant circumstances will no longer be fresh

22 in the mind of the district court judge."   <u>Id.</u>

23             Plaintiff's sole justification for its request that the

24 court delay awarding attorneys' fees is that "judicial economy

25 will be best served if this Motion is stayed pending the outcome

26 of the appeal."   (Opp'n to Mot. for Att'ys Fees at 5:22-23.)

27 Although an award of attorneys' fees would have to be vacated if

28 the judgment is reversed, this is no different than any other

9

1  case in which judgment is appealed and the prevailing party is

2  awarded attorneys' fees.

3        The court is in a much better position at the present

4  time, when the details of the proceedings are fresh in its mind,

5  to judge the expertise and time required by defense counsel to

6  prevail in this case than it would be when the appeal has been

7  decided.  Judicial economy would therefore not be served by

8  requiring the court to revisit cases years after they were

9  initially decided for the sole purpose of awarding attorneys'

10 fees.  The court declines to exercise its discretion to stay the

11 present motion for attorneys' fees pending the outcome of the

12 appeal.

13        D.   Judicial Estoppel

14        "Judicial estoppel is an equitable doctrine that

15 precludes a party from gaining an advantage by asserting one

16 position, and then later seeking an advantage by taking a clearly

17 inconsistent position."  Hamilton v. State Farm Fire & Cas. Co.,

18 270 F.3d 778, 782 (9th Cir. 2001).  A court invokes judicial

19 estoppel not only to prevent a party from gaining an advantage by

20 taking inconsistent positions, but also because of "general

21 consideration[s] of the orderly administration of justice and

22 regard for the dignity of judicial proceedings," and to "protect

23 against a litigant playing fast and loose with the courts."

24 Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990).

25        In New Hampshire v. Maine, the United States Supreme

26 Court listed three factors that courts may consider in

27 determining whether to apply the doctrine of judicial estoppel in

28 a particular case: first, whether a party's later position would

be "clearly inconsistent" with its earlier position; second, whether judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and third, whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.[1] New Hampshire, 532 U.S. at 750-51.

The first New Hampshire factor requires a finding that a party's later position is "clearly inconsistent" with its earlier position. Id. at 750. Plaintiff argues that "Defendants successfully convinced this Court that it should not make any determination on the validity of the agreements at issue," and should therefore "be bound by their actions and precluded from seeking affirmative relief under these same agreements." (Opp'n to Mot. for Att'ys Fees at 7:25-27.) If the award of attorneys' fees were predicated upon the court finding that the underlying agreements were valid and binding on both parties, plaintiff's argument would be more persuasive. The court, however, is not required to find that plaintiff is bound by the underlying contracts in order to award attorneys' fees in this case.

Even in cases in which the court has held that no valid contract existed, it has nevertheless awarded attorneys' fees to the prevailing part. See Hsu, 9 Cal. 4th at 876. Denying attorneys' fees in cases in which the underlying contract is

---

[1]     In enumerating these factors, the Court noted that they were not establishing inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. New Hampshire, 532 U.S. at 751. Additional considerations may thus inform the doctrine's application in specific factual contexts. Id.

11

found to be invalid would fail to achieve section 1717's goal of "full mutuality of remedy if its benefits were denied to parties who defeat contract claims by proving they were not parties to the alleged contract or that it was never formed." Id. at 870.

Plaintiff cites no authority for its position that a party that prevails based on the statute of limitations is not entitled to fees based on the doctrine of judicial estoppel. The court is aware of at least two cases holding that a defendant who prevails on the statue of limitations is entitled to fees pursuant to California Civil Code section 1717. See, e.g., Grolsche Bierbrouwerij Nederland, B.V. v. Dovebid, Inc., No. C 11-00763, 2011 WL 5080175, at *2-3 (N.D. Cal. Oct. 26, 2011) (awarding attorneys' fees to defendant pursuant to section 1717 after defendant prevailed based on statute of limitations defense); VSL Corp., 1998 WL 124208 at *4 (same). Because the court is not required to find the underlying contracts valid in order to enforce their attorneys' fee provisions, defendants' motion for attorneys' fees does not present a legal position that is "clearly inconsistent" with their earlier position that plaintiff's claim was barred by the statute of limitations. Precluding defendants' recovery of attorneys' fees based on judicial estoppel would therefore be inappropriate in this matter.

E.   Lodestar Calculation

The purpose of California Civil Code section 1717 is "to establish uniform treatment of fee recoveries in actions on contracts containing attorney fee provisions." PLCM Grp. v. Drexler, 22 Cal. 4th 1084, 1094-95 (2000) (quoting Santisas v.

1  <u>Goodin</u>, 17 Cal. 4th 599, 616 (1998)).   To achieve this goal, the

2  trial court is given "broad authority to determine the amount of

3  a reasonable fee."  <u>Id.</u> at 1095 (citing <u>Int'l Indus., Inc. v.</u>

4  <u>Olen</u>, 21 Cal. 3d 218, 224 (1978); <u>see also</u> <u>Montgomery v. Bio-Med</u>

5  <u>Specialties, Inc.</u>, 183 Cal. App. 3d 1292, 1297 (4th Dist. 1986)

6  (providing that the trial court has "wide latitude in determining

7  the amount of an award of attorneys['] fees").   In exercising

8  this authority, the court is primarily guided by principles of

9  equity.   <u>See</u> <u>Beverly Hills Props. v. Marcolino</u>, 221 Cal. App. 3d

10 Supp. 7, 12 (Super. App. 1990) ("[T]he award of attorney[s'] fees

11 under section 1717, as its purposes indicate, is governed by

12 equitable principles." (citing <u>Int'l Indus.</u>, 21 Cal. 3d at 224)).

13          "[T]he fee setting inquiry in California ordinarily

14 begins with the 'lodestar,' i.e., the number of hours reasonably

15 expended multiplied by the reasonable hourly rate."  <u>PLCM Grp.</u>,

16 22 Cal. 4th at 1095.   "The reasonable hourly rate is that

17 prevailing in the community for similar work."  <u>Id.</u> (citing

18 <u>Margolin v. Reg'l Planning Comm'n</u>, 134 Cal. App. 3d 999, 1004 (2d

19 Dist. 1982)).   After calculating the lodestar, the trial court

20 "shall consider whether the total award so calculated under all

21 of the circumstances of the case is more than a reasonable amount

22 and, if so, shall reduce the section 1717 award so that it is a

23 reasonable figure."  <u>Id.</u> at 1095-96 (quoting <u>Sternwest Corp. v.</u>

24 <u>Ash</u>, 183 Cal. App. 3d 74, 77 (2d Dist. 1986)).   Defendants

25 propose that the base lodestar figure of $127.206.96 would be an

26 appropriate amount for attorneys' fees and untaxed costs in this

27 case.  (Mot. for Att'ys Fees at 1:19-20.)

28          1.   <u>Reasonable Hourly Rates</u>

1     A reasonable hourly rate is the prevailing rate in the
2 community for similar work performed by attorneys of comparable
3 skill, experience, and reputation.  <u>Moreno v. City of Sacramento</u>,
4 534 F.3d 1106, 1111 (9th Cir. 2008).  "The party requesting the
5 fees must produce satisfactory evidence in addition to the
6 attorney's own affidavits or declarations that the rates are in
7 line with community rates."  <u>Bd. of Trs. v. Core Concrete Const.,</u>
8 <u>Inc.</u>, No. C 11-02532, 2012 WL 380304, at *6 (N.D. Cal. Jan. 17,
9 2012) (citing <u>Blum v. Stenson</u>, 465 U.S. 886, 895 n.11 (1984));
10 <u>see also</u> <u>Gorman v. Tassajara Develop. Corp.</u>, 178 Cal. App. 4th
11 44, 98 (6th Dist. 2009) (noting that the "burden is on the party
12 seeking attorney fees to prove that the fees it seeks are
13 reasonable").

14     The relevant legal community is traditionally "the
15 forum in which the district court sits," <u>Camacho v. Bridgeport</u>
16 <u>Fin., Inc.</u>, 523 F.3d 973, 979 (9th Cir. 2008), which in this case
17 is the Eastern District of California.  "[R]ates outside the
18 forum may be used if local counsel was unavailable, either
19 because they are unwilling or unable to perform because they lack
20 the degree of experience, expertise, or specialization required
21 to handle properly the case."  <u>Barjon v. Dalton</u>, 132 F.3d 496,
22 500 (9th Cir. 1997).

23     During oral arguments, Mr. Macauley explained that his
24 firm, San Francisco-based Nossaman LLP, has represented defendant
25 Magnum since at least 2005 and had first hand familiarity with
26 the dispute between the parties over the last six years on the
27 contracts in question.  When plaintiff finally filed for
28 declaratory relief, Magnum naturally turned to Nossaman for

representation because the firm was involved, having handled the
initial buy-out transaction.   The attorneys at Nossaman therefore
had already had developed experience and expertise on the facts
underlying this specific case.   If defendants had instead turned
to a Sacramento-based firm, with presumably lower hourly rates,
the attorneys would have had to spend significantly more time
familiarizing themselves with the historical facts surrounding
the disagreement.   While it is impossible to surmise exactly how
much time this would have taken a new firm, the additional hours
would have at least partially offset the higher hourly rate
charged by Nossaman's attorneys.[2]   Because of counsel's prior
dealings with both parties in this dispute, it is appropriate to
apply the prevailing rates for the community in which counsel is
located -- San Francisco.   See PLCM Grp. v. Drexler, 22 Cal. 4th
1084, 1096 (finding no error in awarding "prevailing market rate
for comparable legal services in San Francisco, where counsel is
located" in a case heard in Los Angeles)

Here, defendants seek the following hourly rates: $535
per hour for the services of David Kimport; $440 per hour for
Brendan Macaulay; $410 per hour for Danielle Gensch; $400 per
hour for John Hansen;   $340 per hour for James Vorhis, Chi Soo
Kim, and Sayed Ahmed; $270 per hour for Katy Young; $250 per hour

---

[2]     The court acknowledges that defendants cannot both turn
to an out-of-forum firm based on their experience with the case
and bill for research that a local firm would not have needed to
do based on familiarity with the forum.   Accordingly, as
discussed further below, the court has reduced counsel's billed
hours to exclude time spent researching the local rules and
reviewing the court's calendaring procedures and deadlines.

for Sarah Andropoulos; and $165 per hour for Jane Towell.[3]

With respect to the prevailing market rate for services rendered by himself, Mr. Macaulay submitted his own declaration establishing the following facts.  Mr. Macaulay has been practicing law in the area of complex business litigation for nineteen years.  (Macauley Decl. ¶ 2 (Docket No. 32).)  He graduated from Duke University School of Law in 1992 and has been admitted to the United States District Courts for the Central, Southern, Eastern, and Northern Districts of California, and the Ninth Circuit Court of Appeals.  (Id.)  Mr. Macaulay has submitted "many fee requests in state and federal courts" and "no court has ever opined that [his] rate was too high."  (Id. ¶ 4.)

Defendants provide supporting evidence on the prevailing rates awarded under attorneys' fee provisions by courts in "Northern California."  Based on the list of hourly rates awarded adjusted for experience level, Mr. Macaulay's rate of $440 per hour is at or below the prevailing rate for attorneys in Northern California with similar years of experience.  The reasonableness of Mr. Macaulay's rate is also confirmed by the court's independent research.  See, e.g., Armstrong v. Brown, 805 F. Supp. 2d 918, 921 (N.D. Cal. 2011) (awarding $700 per hour for 1978 law school graduate in ADA case); Sierra Club v. E.P.A., 625

---

[3]     Defendants did not provide significant biographical information on the attorneys, other than Mr. Macaulay, who worked on this case.  From what the court can gather from the papers, Katy Young, James Vorhis, Sarah Andropoulos, Cho Soo Kim, and Sayed Ahmed are associates; David Kimport, Danielle Gensch, and John Hansen are partners; and Jane Towell is a Research Librarian.  (See Anastassiou Decl. Ex. B.)

F. Supp. 2d 863, 867 (N.D. Cal. 2007) (finding prevailing hourly rate in San Francisco for experienced attorney to be $450 per hour). Based on this evidence, the requested rates for the other partners working on the matter, Mr. Kimport, Ms. Gensch, and Mr. Hansen, are also within the range for prevailing market rates in San Francisco.

Neither party has provided the court with any evidence establishing what the prevailing rate is for associate attorneys or paralegals in San Francisco. The court thus relies on its own research to determine whether counsel's proposed rates ranging between $250 and $340 per hour for associates and $165 per hour for a research librarian[4] are reasonable given the prevailing rate within the San Francisco legal community. These rates appear to fall within the prevailing rate in San Francisco. See Caplan v. CNA Fin. Corp., 573 F. Supp. 2d 1244, 1249 (N.D. Cal. 2008) (approving hourly rate of $350 for a sixth-year associate, $330 for a fourth-year associate, and $200 for law student clerks); Loretz v. Regal Stone, Ltd., 756 F. Supp. 2d 1203, 1211 (N.D. Cal. 2010) (approving rate of $350 per hour for associates, and $225 per hour for paralegal); Oster v. Standard Ins. Co., 768 F. Supp. 2d 1026, 1035 (N.D. Cal. 2011) (approving $400 per hour for associates and $150 per hour for paralegals in ERISA action); Armstrong, 805 F. Supp. 2d at 921 (awarding $480 per hour for associate who graduated in 2006 and $180 per hour for law students and litigation assistants in ADA case).

---

[4]   Without further guidance, the court will treat the time billed by Ms. Towell, counsel's research librarian, as similar to that of a paralegal for the purpose of awarding fees.

17

1   "The party opposing the fee application has a burden

2   of rebuttal that requires submission of evidence to the district

3   court challenging the accuracy and reasonableness of the . . .

4   facts asserted by the prevailing party in its submitted

5   affidavits." Gates v. Deukmejian, 987 F.2d 1392, 1397–98 (9th

6   Cir. 1992).  Plaintiff presents information about the prevailing

7   rates in Salinas and outdated caselaw on the prevailing rate in

8   Sacramento.  This evidence does not address the prevailing rate

9   for legal services in San Francisco and therefore fails to

10  challenge the reasonableness of defense counsel's rates.

11      Accordingly, in light of counsel's prior work with

12  defendants on this matter, the high quality of the briefs

13  submitted by defendants, the complexity of the underlying action,

14  and the declaration submitted by Mr. Macaulay, the court finds

15  that defendants' proposed rates are reasonable given the

16  prevailing rates in San Francisco.

17          2.   Reasonable Hours Expended

18      Under California law, a court determining the number of

19  hours reasonably expended on a case "must carefully review

20  attorney documentation of hours expended; 'padding' in the form

21  of inefficient or duplicative efforts is not subject to

22  compensation." Ketchum v. Moses, 24 Cal. 4th 1122, 1132 (2001)

23  (quoting Serrano v. Priest, 20 Cal. 3d 25, 48 (1977)).  The

24  district court may exclude from the initial fee calculation hours

25  that were "excessive, redundant, or otherwise unnecessary."

26  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

27      Plaintiff objects to the number of hours defense

28  counsel expended on this case on several grounds, including that:

18

1  (1) defense counsel spent significantly more time working on the
2  case than plaintiff's counsel; (2) counsel billed for
3  administrative tasks that should not be compensated; (3) counsel
4  utilized vague and ambiguous block billing; (4) duplicate billing
5  by multiple attorneys should be reduced or striken; and (5)
6  counsel spent too much time on legal research.

7         In response to the aggregate number of hours that
8  defense counsel has billed, plaintiff argues that it is excessive
9  in comparison with the amount of time that plaintiff's counsel
10 spent on the motions to dismiss. (Opp'n to Mot. for Att'ys Fees
11 at 16:23-17:9.) Defense counsel spent 270.95 hours on this
12 action compared to the 96 hours that plaintiff's counsel spent on
13 the two underlying substantive motions. (Id. at 16:26-17:4.)
14 Plaintiff argues that the substantive motions were relatively
15 routine motions that should not have taken 270 hours to complete.

16        The court notes that plaintiff is comparing two
17 separate figures: the time that defendant spent on the action as
18 a whole, including the motion for attorneys' fees, versus the
19 time plaintiff spent on the substantive motion to dismiss and
20 motion for reconsideration. Defendants are entitled to be
21 compensated for all appropriate attorneys' fees stemming from
22 their defense of this action, not only to the expenses relating
23 to the substantive motions. For example, other tasks that
24 defense counsel performed after being served with the Complaint
25 included: ensuring that a litigation hold was put in place;
26 communicating with plaintiff's counsel regarding the deadline to
27 respond; communicating with the client regarding the facts of the
28 case; strategizing about the appropriate response; analyzing

19

jurisdiction and venue; reviewing the Complaint and all of the
attached documents; and reviewing the history of the transaction.
(Macaulay Supp'l Decl. ¶ 8 (Docket No. 42).)

The amount of time billed by defense counsel
additionally reflects the difficulty of the issues raised in this
action.  Plaintiff's claim that this action was based on a
"simple" statute of limitations issue oversimplifies the
underlying litigation.  Although the merits of the Complaint were
technically never addressed by the court, plaintiff made repeated
arguments based on the merits of its claims -- such as the lack
of legends on the stock certificate, enforceability of drag-along
rights, validity of the agreements at issue, and certification
share issues.  The fact that defense counsel proceeded to
research and address such issues should therefore come as no
surprise to plaintiff.  Defendants also explain that "many of
Yenidunya's arguments lacked any legal support, or were contrary
to law.  An argument that Yenidunya could craft without authority
in 10 minutes might require hours of research/briefing to
debunk."  (Reply to Opp'n to Mot. for Att'ys Fees at 9:25-10:2.)
The court is sympathetic with defendants' contention that there
were a significant number of complex legal issues that were
raised by plaintiff throughout the litigation that likely took
defense counsel many hours to research and brief.

"In challenging attorney fees as excessive because too
many hours of work are claimed, it is the burden of the
challenging party to point to the specific items challenged, with
a sufficient argument and citations to the evidence.  General
arguments that fees claimed are excessive, duplicative, or

1  unrelated do not suffice." Premier Med. Mgmt., Inc. v. Cal. Ins.

2  Guarantee Ass'n, 163 Cal. App. 4th 550, 564 (2d Dist. 2008).

3  Plaintiff does not satisfy this burden because it does not

4  identify specific entries or activies as excessive.[5]  Absent

5  plaintiff providing specific areas in which hours should be cut,

6  the court finds that the total time expended by defense counsel

7  was reasonable.

8         As to the specific type of tasks billed, plaintiff

9  argues that counsel billed tasks normally performed by paralegals

10 or legal secretaries.  (Opp'n to Mot. for Att'ys Fees at 17:10-

11 14.)  Specifically, it identifies reviewing the local rules and

12 calculating motion deadlines as such administrative tasks.  The

13 court finds that the time expended to become familiar with the

14 Eastern District Local Rules is in the nature of "general

15 education" and should not have been billed to the client. See

16 generally, e.g., Perdue v. City Univ. of N.Y., 13 F. Supp. 2d

17 326, 346 (E.D.N.Y. 1998) ("Although Perdue's attorneys are

18 entitled to reasonable compensation for time spent in researching

19 employment discrimination law, they should not be fully

20 compensated for their general education.").  Time spent

21 calculating motion deadlines should similarly not be charged to

22 the client as it is a primarily administrative task.  Plaintiff

23 does not quantify how large of a reduction should be applied

24 _____

25        [5]   Plaintiff does provide annotated copies of defense
   counsels' billing statements in which entries are color-coded by
26 activity.  (See Anastassiou Decl. Ex. D.)  This does not aid the
   court in determining whether counsel spent excessive time on the
27 matter as a whole or on any one activity.  Based on plaintiff's
   annotations, it appears that the only activity conducted by
28 defense counsel that it approves of is the actual drafting of
   defendants' motions.

under this objection.   Defendants estimate that "no more than 1-2 hours" were spent on such tasks.  (Reply to Opp'n to Mot. for Att'ys Fees at 11:2-3.)   This estimate appears reasonable based on the court's review of the billing descriptions.   Accordingly, the court will reduce Mr. Macaulay's billable hours by two hours.

In support of its argument that defense counsel utilized vague and ambiguous block billing,[6] plaintiff claims that "multiple 'block entries' make it impossible for Plaintiff and the Court to ascertain exactly how much time [defense counsel] spent on each of the separate tasks."  (Opp'n to Mot. for Att'ys Fees at 17:18-20.)   For example, plaintiff notes that on July 7, 2011, Mr. Macaulay billed 4.10 hours of time under one entry which related to the performance of nine separate tasks.  (Id. at 17:17-18.)   Other than this entry, plaintiff does not specifically object to any other entry but requests that the entries should be "substantially reduced or stricken entirely." (Opp'n to Mot. for Att'ys Fees at 18:15-16.)

A district court should refrain from reducing fees until it first determines whether "'sufficient detail has been provided so that [the Court] can evaluate what the lawyers were doing and the reasonableness of the number of hours spent on those tasks.'"  Fitzgerald v. City of L.A., No. 03-1876, 2009 WL 960825, at *8 (C.D. Cal. Apr. 7, 2009) (quoting Smith v. District of Columbia, 466 F. Supp. 2d 151, 158 (D.D.C. 2006)) (alteration

---

[6]   "'Block billing' is 'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'"  Welch v. Metro. Life Ins. Co., 480 F.3d 942, 945 n.2 (9th Cir. 2007) (quoting Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1554 n.15 (10th Cir. 1996)).

1  in original).   The court must be "practical and realistic"

2  regarding how attorneys operate; if attorneys "have to document

3  in great detail every quarter hour or half hour of how they spend

4  their time . . . their fee[s] . . . will be higher, and the

5  lawyers will simply waste precious time doing menial clerical

6  tasks."  <u>Smith</u>, 466 F. Supp. 2d at 158.

7          In this case, the vast majority of the block billing

8  involves the grouping of highly-related tasks that rarely cover

9  more than a few hours.  See <u>Fitzgerald</u>, 2009 WL 960825, at *8

10 (finding block-billing acceptable where "[m]any of [the] entries

11 identified as block-billing are actually different parts of the

12 same task"); <u>cf.</u> <u>Role Models Am., Inc. v. Brownlee</u>, 353 F.3d 962,

13 971 (D.C. Cir. 2004) (finding block-billed entries unreasonable

14 because they "include[d] time spent on bankruptcy matters, which

15 ha[d] nothing to do with th[e] appeal" and "prevent[ed] . . .

16 verifying that [appellant] deducted the proper amount of time").

17 Furthermore, in most of counsel's entries, the court is well-

18 equipped to "compare the hours expended against the tasks and

19 assess the reasonableness of those tasks."  <u>Fitzgerald</u>, 2009 WL

20 960825, at *8.  Accordingly, having examined counsel's block

21 billing, the court does not find it necessary to reduce the hours

22 billed.

23         Plaintiff next argues that duplicate billings by

24 multiple attorneys should be reduced or striken.  (Opp'n to Mot.

25 for Att'ys Fees at 18:17-26.)  Plaintiff contends that defense

26 counsel's use of nine different attorneys on the case resulted in

27 excessive and duplicative internal communications between

28 counsel.  (<u>Id.</u> at 18:18-23; Anastassiou Decl. ¶ 13 (Docket No.

40).)  Plaintiff specifically notes that, as a result of this duplicative work, in one of the invoices in which $20,617.25 in fees was claimed by defendants, only $528.00 was billed for drafting the motion to dismiss.[7]  (Macaulay Decl. Ex. A.)

While "[c]oncerns about overstaffing are a relevant consideration," determining whether there has been unnecessary duplication often requires a difficult exercise of "judgment and discretion, considering the circumstances of the individual case."  Fitzgerald, 2009 WL 960825 at *9 (citing Democratic Party of Wash. State v. Reed, 388 F.3d 1281, 1286-87 (9th Cir. 2004)).  In this case, the majority of the work was done by two attorneys, with five of the other billers working on the case for less than nine hours each.  (Reply to Opp'n to Mot. for Att'ys Fees at 11:6-12.)  This suggests that overstaffing was not a significant cause of duplication.  Other than simply highlighting all instances in which defense counsel billed for time spent on interoffice correspondence and what it claims were duplicative efforts in reviewing the Complaint or attorney work product, plaintiff provides no persuasive reason why having two or three attorneys discuss strategy on the case or review the Complaint and attorney work product was unreasonable.  See, e.g., Moreno, 534 F.3d at 1113 ("Findings of duplicative work should not become a shortcut for reducing an award without identifying just why the requested fee was excessive . . . .");  Jefferson v. Chase Home

---

[7]    In his supplemental declaration, Mr. Macaulay explains that the month to which plaintiff is referring was the first month following the Complaint being filed.  (Macaulay Supp'l Decl. ¶ 8 (Docket No. 41).)  It is therefore appropriate that counsel spent time reviewing the Complaint and researching the motion to dismiss prior to beginning to draft the motion.

Fin., No. 06-6510, 2009 WL 2051424, at *4 (N.D. Cal. July 10, 2009) ("Chase has identified few substantive areas of duplicative effort, and does not make a persuasive case that the case was overstaffed. . . . [B]ecause the bulk of the hours spent were from a few attorneys, this does not appear unreasonable."); see also Fitzgerald, 2009 WL 960825, at *8 ("The Court does not find the presence of lawyers at court meetings to be excessive or unnecessarily duplicative in this case . . . Plaintiffs typically only seek fees for two or three lawyers at those meetings.").

        Finally, with regard to the amount of research performed by defense counsel, plaintiff contends that the "attorneys at Nossaman claim to have extensive experience with the underlying subject matter, which would indicated that should [sic] already be well versed on the case law for the underlying subject." (Anastassiou Decl. ¶ 13f.)  Plaintiff does not identify any specific research task that it deems unnecessary, but rather highlights each instance in which defense counsel billed for time spent conducting legal research on the case. Legal research is a core function of an attorney's role in litigating a case.  This case presented a number of novel and complex issues that likely required significant research to respond to.  After reviewing the invoices, the court finds that the time defense counsel billed for legal research was not unnecessarily excessive and was favorably reflected in the quality of defendants' briefs.

        Defendants have estimated that Mr. Macaulay will spend an additional 25 hours after January 1 to complete the motion on attorneys' fees, prepare a Reply, and prepare for and attend the

1  hearing.  (Mot. for Att'ys Fees at 9:4-6.)  Plaintiff has not
2  objected to this request.  The court will therefore add 25 hours
3  to Mr. Macaulay's billed time.

4       After reviewing plaintiff's objections to the number of
5  hours expended by defense counsel on this action, the court will
6  reduce Mr. Macaulay's billed hours from 163.9 hours to 161.9
7  hours based on the inclusion of administrative tasks that should
8  not have been billed to the client.  The court will also increase
9  Mr. Macaulay's billed hours from 161.9 to 186.9 to reflect work
10 that has been completed after counsel's last-submitted billing
11 statement.  The court finds that the remaining hours were
12 reasonably expended defending this action.

13            3.  Adjustments To The Lodestar Figure

14       After performing the lodestar calculations, the court
15 must "consider whether the total fee award so calculated under
16 all of the circumstances is more than a reasonable amount and, if
17 so, [must] reduce the . . . award so that it is a reasonable
18 figure."  PLCM Grp., 22 Cal. 4th at 1095-96.  To make this
19 determination, the court considers "a number of factors,
20 including the nature of the litigation, its difficulty, the
21 amount involved, the skill required in its handling, the skill
22 employed, the attention given, the success or failure, and other
23 circumstances of the case."  Id. at 1096 (quoting Melnyk v.
24 Robledo, 64 Cal. App. 3d 618, 623-624 (2d Dist. 1976)).

25       Multiplying the reasonable hours expended by defense
26 counsel by the hourly rates approved by the court, the lodestar
27 figure amounts to $125,324.75.  The table below illustrates this
28 calculation:

| Attorney | Time Billed | | Hourly Rate | | Total |
|---|---|---|---|---|---|
| David Kimport | 36.7 hours | x | $ 535 | = | $ 19634.50 |
| Brendan Macaulay | 186.9 hours | x | $ 440 | = | $ 82236 |
| John Hansen | 14.9 hours | x | $ 400 | = | $ 5960 |
| Katy Young | 21.5 hours | x | $ 270 | = | $ 5805 |
| James Vorhis | 1.4 hours | x | $ 340 | = | $ 476 |
| Sarah Andropoulos | 4.5 hours | x | $ 250 | = | $ 1125 |
| Chi Soo Kim | 1.8 hours | x | $ 340 | = | $ 612 |
| Danielle Gensch | 8.5 hours | x | $ 410 | = | $ 3485 |
| Sayed Ahmed | 17.5 hours | x | $ 340 | = | $ 5950 |
| Jane Towell | 0.25 hours | x | $ 165 | = | $ 41.25 |
| | | | **Total** | **=** | **$ 125324.75** |

There are several factors that the court could used to apply a negative multiplier to the lodestar amount, Morales v. City of San Rafael, 96 F.3d 359, 364 n.9 (9th Cir. 1996), but there is a strong presumption that the lodestar amount is reasonable.  Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 n.4 (9th Cir. 2000).  Given the nature and difficulty of this litigation, the number of hours reasonably expended by defendants' attorneys, the skill demonstrated by those attorneys, and defendants' overall victory on the underlying claims, the court finds that the lodestar figure need not be adjusted. Therefore, the court will award defendants $125,324.75 in attorney's fees.

        iv.  Untaxed Costs

Defendants also ask that the award include payment for a number of costs and expenses.  Out-of-pocket costs and expenses incurred by an attorney that would normally be charged to a fee-

1  paying client are recoverable as attorneys' fees.  <u>United</u>
2  <u>Steelworkers of Am. v. Phelps Dodge Corp.</u>, 896 F.2d 403, 407 (9th
3  Cir. 1990).  Defendants' request includes $1,002.21 in costs.
4  Plaintiff notes that some of the costs "are perhaps more properly
5  considered overhead," but does not object to them because they
6  "are not unreasonable" and "not terribly substantial."
7  (Anastassiou Decl. ¶ 16.)  Accordingly, the court will award
8  defendants untaxed costs of $1,002.21.

9       IT IS THEREFORE ORDERED that defendants' motion for
10  attorneys' fees be, and the same hereby is, GRANTED in the
11  amounts of $125,324.75 in attorneys' fees and $1,002.21 in
12  untaxed costs.

13  DATED:    February 16, 2012

14
15  _____
16  WILLIAM B. SHUBB
   UNITED STATES DISTRICT JUDGE
17
18
19
20
21
22
23
24
25
26
27
28